J-S62007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                       :           PENNSYLVANIA
                                         :
             v.                     :
                                         :
                                       :
EDWIN GAGO                    :
                                       :
            Appellant         :    No. 1230 EDA 2017

Appeal from the PCRA Order March 17, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013691-2010

BEFORE: LAZARUS, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:           **FILED DECEMBER 04, 2018**

Edwin Gago appeals from the order, entered in the Court of Common Pleas of Philadelphia County, denying his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Upon review, we affirm, based in part on the opinion authored by the Honorable Susan I. Schulman.

The trial court summarized the relevant facts as follows:

At trial, the Commonwealth presented the testimony of Edward DeOleo Valdez. On September 21, 2010, Mr. DeOleo left the home he occupied with his girlfriend, Maritza Rodriguez, at 3060 E. Street, to go to the corner grocery [store] at E. and Clearfield [Streets]. [DeOleo] had worked at that grocery [store] for the previous year and a half. He had originally met Ms. Rodriguez, as well as her previous boyfriend, the Appellant, Edwin Gago, as customers at that store. [Gago] and Ms. Rodriguez have two (2) children together.

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

While walking to the store, Mr. DeOleo heard steps behind him, turned, and saw a person behind him, wearing a black mask.[2] Recognizing his body, face and eyes, Mr. DeOleo spoke [Gago's] nickname, 'Mingo', and in response, heard [Gago] say in a voice which DeOleo recognized, 'I told you I would get you in the street, Cabron.' Mr. DeOleo then turned, ran towards the grocery store, and heard gunshots as he ran. Mr. DeOleo was struck in the back, stomach and head as he ran towards and into the grocery store. The owner of the grocery store, Eustacia Guzman, came to his assistance, [and] called Ms. Rodriguez, who ran to the grocery store. As he lay on the floor of the grocery store, Mr. DeOleo repeatedly told Mr. Guzman and Ms. Rodriguez that 'Mingo' had shot him.

Mr. DeOleo was taken to Temple University Hospital where he underwent surgery on his pelvis, intestines and stomach. In addition to the wounds in his abdomen, he also sustained wounds in his shoulder and on his head. He was hospitalized for nine days and had a recovery period in excess of three months. While at Temple University Hospital, Mr. DeOleo was shown a photo array and identified [Gago] as his assailant. He again identified [Gago] as his assailant at trial.

[Gago] was, as of September 2010, under a Protection from Abuse ("PFA") order obtained by Ms. Rodriguez. Ms. Rodriguez testified that she had sought the restraining order in June of 2010 because [Gago] had harassed her both at home and at her place of employment, a Hess station on City Line Avenue, by repeated unwanted visits and phone calls in which he threatened to kill himself if Ms. Rodriguez would not allow him to return to the home that he had shared with Ms. Rodriguez and their two sons. Ms. Rodriguez testified that she observed [Gago] driving past her home displaying what she believed to be a gun. She testified that she was scared of [Gago] because she believed that he was violent, that she and [Gago] argued, and that [Gago] choked her 'so many times.'

[Gago] sought to establish that Ms. Rodriguez sent him messages through Facebook and left text messages on his phone seeking to reconcile with him. Rodriguez denied that she had made the Facebook postings or the phone calls. The Commonwealth introduced testimony identifying the phone number used for these text messages as belonging, at the time of the alleged text messages, to Jorge Santoni, [Gago's] brother, not Ms. Rodriguez.

[Gago] presented alibi testimony through his cousin, Damien Santoni, who contended that [Gago] was at his garage at 249 West Duncannon [Street] doing electrical work at the time he allegedly had made the threatening drive-by on September 21, 2010[,] described by DeOleo[,] and that [Gago] had been present at his garage at 4610 4th Street at the time Mr. Deoleo was shot. Mr. Santoni's testimony was supported by the testimony of his son, Devon Moore, who testified that he had seen [Gago] at the 249 West Duncannon [Street] garage as well as at the 4610 [4]th Street garage at those times.

[Gago] also presented the testimony of his niece, Yajaira Reyes, who lives with his mother, to dispute the description of [the] July of 2010 encounter provided by Ms. Rodriguez and Mr. DeOleo. In contrast to the testimony of Mr. DeOleo and Ms. Rodriguez, Ms. Reyes testified that the aggressor was Ms. Rodriguez who "spoke in a bad tone" to [Gago] and said[,] "What is this cabron [sic] doing here, this bastard, this son of a bitch, I'm going to put him in jail." Ms. Reyes testified that [Gago] said nothing during the encounter.

_____

[2]DeOleo testified to having several previous encounters with Gago. One took place in July of 2010 at City Hall. DeOleo was there with Rodriguez and her son Javier when they ran into Gago who, according to DeOleo, came towards them with a threatening and menacing face and told DeOleo that "I'm going to get you in the street, Cabron." Another encounter took place on the morning of September 21, 2010. DeOleo stood in the doorway of his home, which he shared with Rodriguez, with Javier and observed Gago drive past in a truck and come to a stop in the road, and looked at DeOleo in what he described as a threatening manner. DeOleo went to the grocery store because he was scared and observed Gago circle the block and return to park in front of the home.

Trial Court Opinion, 12/18/17, at 2-4.

On September 26, 2011, a jury convicted Gago of attempted murder in the first degree,[2] aggravated assault,[3] possessing a firearm without a license,[4] and possessing instruments of crime.[5] On March 23, 2012, the court sentenced Gago to an aggregate term of fifteen to thirty years of incarceration.[6] Gago filed a direct appeal and, on November 20, 2013, this Court affirmed his judgment of sentence. **Commonwealth v. Gago**, No. 1942 EDA 2012 (Pa. Super. filed Nov. 20, 2013) (unpublished memorandum). Gago subsequently filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied. **Commonwealth v. Gago**, 94 A.3d 1007 (Pa. 2014).

On May 18, 2015, Gago filed a counseled PCRA petition, and subsequently amended it, challenging trial counsel's effectiveness. Specifically, Gago claimed: (1) trial counsel was ineffective for opening the door to other crimes/bad acts evidence; (2) trial counsel was ineffective for

---

[2] 18 Pa.C.S.A. § 901.

[3] 18 Pa.C.S.A. § 2702(a)(1).

[4] 18 Pa.C.S.A. § 6106(a)(1).

[5] 18 Pa.C.S.A. § 907(a).

[6] The court sentenced Gago as follows: 15-30 years' imprisonment for attempted murder; 5-10 years' concurrent imprisonment for aggravated assault; 2-4 years' concurrent imprisonment for possessing a firearm without a license; and no further penalty imposed on possessing an instrument of crime.

failing to object to the attempted murder and aggravated assault instruction given by the court; and (3) trial counsel was ineffective for failing to object to inadmissible hearsay evidence. On March 17, 2017, the court dismissed Gago's petition. This appeal followed.

On appeal, Gago raises the following issues:

1. Did the PCRA court err by denying relief on a claim alleging that trial counsel was ineffective for opening the door to other crimes or bad acts evidence?

2. Did the PCRA court err by denying relief on a claim alleging that [] trial counsel was ineffective for not objecting to defective attempted murder and aggravated assault instructions?

3. Did the PCRA court err by denying relief on a claim alleging that trial counsel was ineffective for not objecting to incriminating inadmissible hearsay evidence?

Appellant's Brief, at 3.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1267 (Pa. 2008) (citation omitted).

> [C]ounsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) [the petitioner] was prejudiced by counsel's action or omission. To demonstrate prejudice, an appellant must prove that a reasonable probability of acquittal existed but for the action or omission of trial counsel. A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. Further, a PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness.

- 5 -

*Commonwealth v. Perry*, 959 A.2d 932, 936 (Pa. Super. 2008) (punctuation marks and citations omitted).

In determining whether counsel's action was reasonable, the court does not consider "whether there were other more logical courses of action" counsel could have pursued, but simply examines whether counsel's decision had any reasonable basis. *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007). Conversely, to merit relief, counsel's action, given all the other available alternatives, must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Miller*, 431 A.2d 233, 234 (Pa. 1981).

A failure to satisfy any prong of the test for ineffectiveness requires rejection of the claim. *Washington*, 927 A.2d at 594. "In the context of a PCRA proceeding, [the defendant] must establish that the ineffective assistance of counsel was of the type 'which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" *Id.* (quoting 42 Pa.C.S.A. § 9543(a)(2)). The defendant must establish actual prejudice, or demonstrate that the alleged act of ineffectiveness falls within a narrow range of circumstances in which there is a presumption of prejudice. *Commonwealth v. Reed*, 971 A.2d 1216, 1224-25 (Pa. 2009).

As the Pennsylvania Supreme Court emphasized, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective" under the law in existence at the time of counsel's act or omission. *Commonwealth v. Daniels*, 963 A.2d 409, 429 (Pa. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). "[A] defendant is not entitled to relief simply because the strategy is unsuccessful." *Commonwealth v. Tippens*, 598 A.2d 553, 556 (Pa. Super. 1991) (en banc); *accord Commonwealth v. Buksa*, 655 A.2d 576, 582 (Pa. Super. 1995).

Gago first claims that trial counsel was ineffective for "opening the door" to other bad acts evidence. On direct appeal, this Court concluded that trial counsel in fact had "opened the door" to this evidence and, thus, Pennsylvania Rule of Evidence 404(b) did not bar its admission. *See Commonwealth v. Gago*, No. 1942 EDA 2012 (Pa. Super. filed Nov. 20, 2013) (unpublished memorandum). This testimony included evidence of 911 call logs from the home Gago and Rodriguez shared as well as testimony by Rodriguez that Gago was violent, that he was cheating on her, and that he was drinking and smoking marijuana heavily. The issue before us is whether counsel is ineffective for having done so. After our review of the parties' briefs, the record and the relevant law, we conclude that Judge Schulman has thoroughly and properly addressed this issue in her opinion. *See* Trial Court Opinion, 12/20/17, at 7-13 (trial counsel's effort to undercut Commonwealth's argument that victim was in fact jealous and violent party did have reasonable basis designed to effectuate Gago's best interest and fact that it was

- 7 -

unsuccessful is immaterial; further, given compelling evidence against him, Gago failed to establish prejudice).

Gago next claims that trial counsel was ineffective for not objecting to defective attempted murder and aggravated assault instructions. Specifically, Gago argues that word "allegedly" was not included in the jury instruction prior to the word "shot" or "shooting." He claims counsel's failure to object or request the court to modify or recharge the jury with the omitted language prejudiced him by making it appear that the court agreed that Gago was the shooter.

Our Supreme Court has stated:

A trial court has wide discretion in phrasing jury instructions. When reviewing an allegation of an incorrect jury instruction, the appellate court must view the entire charge to determine whether the trial court clearly and accurately presented the concepts of the legal issue to the jury and should not reverse, as a result of the instruction, unless the trial court committed an abuse of its discretion. We will not examine a phrase or sentence of an instruction in a vacuum. Rather, when we evaluate a challenge to a charge, we must consider how each part fits together to convey a complete legal principle.

*Commonwealth v. Ragan*, 743 A.2d 390, 397-98 (Pa. 1999) (citations omitted). Trial counsel will not be held ineffective for failure to object to an erroneous jury instruction unless the petitioner can establish prejudice: i.e., if counsel had objected to the charge, there is a reasonable probability that the result at trial would have been different. *Commonwealth v. McGill*, 832 A.2d 1014, 1023 (Pa. 2003).

Pennsylvania Standard Jury Instruction § 12.901A.1 provides in pertinent part:

> First, that the defendant did a certain act, that is, [he] [she] [describe act]; Second, that at the time of this alleged act, the defendant had the specific intent to kill [name of victim], that is, [he] [she] had a fully formed intent to kill and was conscious of his or her own intention; and Third, that the act constituted a substantial step toward the commission of the killing the defendant intended to bring about.

Pennsylvania Suggested Standard Criminal Jury Instructions, § 12.901A.1. Here, the court gave the following jury instruction for the charge of attempted murder:

> Number one, that Mr. Gago did a certain act; that is, that he shot Mr. DeOleo three times in the back, the stomach, the head . . . that when he shot Mr. DeOleo three times the defendant had specific intent to kill and was conscious of his own intention . . . the shooting constituted a significant step toward the commission of a killing that the defendant intended to bring about.

N.T Trial, 9/26/11, at 69-72.

Because the trial court's instruction closely tracked the language of the Pennsylvania Suggested Standard Jury Instructions, we presume the instruction is accurate. *See Commonwealth v. Kerrigan*, 920 A.2d 190, 198 (Pa. Super. 2007). The court included in the instruction that each element of each offense must be established beyond a reasonable doubt, making clear that it is the jury's prerogative to convict. N.T. Trial, 9/26/11, at 69-71. Further, the evidence at trial, including the video surveillance of the entire shooting and the repeated statements by the victim that it was Gago who shot him, was overwhelming. As such, Gago failed to establish that but for trial

counsel not objecting, the jury would have reached a more favorable verdict. ***Ragan***, ***supra***. Thus, we find no prejudice and, therefore, trial counsel cannot be found ineffective. ***See Commonwealth v. Geathers***, 847 A.2d 730, 737 (Pa. Super. 2004) (finding evidence against defendant too overwhelming to conclude defendant was prejudiced by erroneous jury instruction).

Finally, Gago claims that trial counsel was ineffective for not objecting to incriminating inadmissible hearsay evidence. Gago argues his counsel should have objected to the alleged hearsay evidence presented by Assistant District Attorney Kathryn Brown. ADA Brown testified to being present when another prosecutor called the disputed phone number. Gago provided the number and alleged it belonged to Rodriguez and that she had been calling and texting him. Instead, a man answered, identifying himself as Jorge Santoni, Gago's brother, who stated he owned the phone for five years. Gago argues that ADA Kathryn Brown's testimony, as to hearing Jorge Santoni, answer the phone and admit to owning the number for five years, was inadmissible.

The term "hearsay" is "a statement made by someone other than the declarant while testifying at trial and is offered into evidence to prove the truth of the matter asserted," which "is normally inadmissible at trial." ***Commonwealth v. Ali***, 10 A.3d 282, 316 (Pa. 2010). However, "out-of-court statements may be admissible . . . for some relevant purpose other than to prove the truth of the matter asserted." ***Id.***; ***see also Commonwealth v.***

- 10 -

*Puksar*, 740 A.2d 219, 225 (Pa. 1999) (finding statements by witnesses who overheard defendant and his brother arguing admissible because they were offered to establish motive for killing, not to prove truth of matter asserted); *Commonwealth v. Brown*, 648 A.2d 1177, 1183 (Pa. 1994) (finding testimony from witness was offered to support Commonwealth's position that self-defense claim was sham, not offered as proof of matter asserted). "When a witness testifies that someone said something to him and the purpose is not to show that what was said was true but that the statement was made, the testimony is not hearsay but instead a verbal act." *Commonwealth v. Jones*, 543 A.2d 548, 550 (Pa. Super. 1988) (citations omitted).

Here, ADA Brown's testimony, that she was present when the prosecutor dialed the disputed number and a man answered who identified himself as Jorge Santoni and acknowledged that he owned the phone for five years, was not admitted to prove the truth of the matter asserted. The truth of ADA Brown's testimony, whether Jorge Santoni was in fact the owner of the phone for five years, is not at issue. Instead, the Commonwealth admitted the testimony as a "verbal act," offered to demonstrate that because someone else answered the phone, Rodriguez did not possess the phone and Gago falsified the evidence he had supplied. *See id.* Therefore, because the evidence was admissible, counsel cannot be found ineffective for failing to object.

The PCRA court's findings are supported by the record. We therefore, affirm the PCRA court's order denying relief. **Abu-Jamal**, **supra**. We direct the parties to attach a copy of Judge Schulman's opinion in the event of further proceedings.

Order affirmed.

PJE Ford Elliott, joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/18

0029_Opinion

**FILED**

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

DEC 2 0 2017

Office of Judicial Records
Appeals/Post Trial

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0013691-2010

VS.     :

EDWIN GAGO     :     1230 EDA 2017

CP 51 CR-0013691-2010 Comm. v. Gago, Edwin
Opinion

OPINION

SCHULMAN, S.I., J.



8045556291

Appellant appeals this Court's Order dismissing his petition filed under the Post-Conviction Relief Act, 42 Pa. C.S.A. §§ 9541-9546 ("PCRA"). This Court submits the following Opinion pursuant to Pa. R.A.P. No. 1925 and recommends that Appellant's appeal be denied.

## PROCEDURAL BACKGROUND

On September 26, 2011, a jury convicted Appellant of attempted murder in the first degree (18 Pa. C.S. § 901), aggravated assault (18 Pa. C.S § 2702(a)(1)), possessing a firearm without a license (18 Pa. C.S. § 6106(a)(1)), and possessing an instrument of a crime (18 Pa. C.S. § 907(a)). On March 23, 2012, Appellant was sentenced to an aggregate term of fifteen (15) to thirty (30) years' incarceration.[1]

Appellant filed a direct appeal, and on November 20, 2013, the Superior Court affirmed the jury's verdicts and this Court's sentence. Commonwealth v. Gago, 1942 EDA 2012 (November 20, 2013) (Memorandum Opinion, J. Bender). Appellant subsequently filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which the Court denied on June 12, 2014. Commonwealth v. Gago, 94 A.3d 1007 (Pa. 2014) (Table).

---

[1] 15-30 years imposed on attempted murder; 5-10 years concurrent imposed on aggravated assault; 2-4 years concurrent imposed on possessing a firearm without a license; and no further penalty imposed on possessing an instrument of a crime.

1

On May 18, 2015, Appellant filed a counseled PCRA Petition. On July 22, 2016, the Commonwealth filed a motion to dismiss Appellant's petition. On December 9, 2016, Appellant filed an amended Petition, and on December 12, 2016, this Court conducted an evidentiary hearing on Appellant's claims.

On March 17, 2017, following the evidentiary hearing, this Court dismissed Appellant's Petition. On April 17, 2017, Appellant filed a notice of appeal to the Superior Court, and on May 19, 2017, Appellant filed a Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b).

## RELEVANT FACTUAL HISTORY

This Court summarized the facts of this case in its Rule 1925(a) opinion filed on November 12, 2012, which states:

> At trial, the Commonwealth presented the testimony of Edward DeOleo Valdez. On September 21, 2010, Mr. DeOleo left the home he occupied with his girlfriend, Maritza Rodriguez, at 3060 E. Street, to go to the corner grocery [store] at E. and Clearfield [Streets]. Mr. [DeOleo] had worked at that grocery [store] for the previous year and a half. He had originally met Maritza Rodriguez, as well as her previous boyfriend, the Appellant, Edwin Gago, as customers at that store. Appellant and Ms. Rodriguez have two (2) children together.
>
> While walking to the store, Mr. DeOleo heard steps behind him, turned, and saw a person behind him, wearing a black mask.[2] Recognizing his body, face and eyes, Mr.

---

[2] Mr. DeOleo testified that he had previously had several encounters with Appellant during which Appellant threatened him. One [such encounter] took place in July of 2010 at City Hall where Mr. DeOleo, accompanied by Maritza Rodriguez and one of her sons by Appellant, Edwin Jr. Gago, also known as Javier, had gone to get papers needed for his divorce. While there, they saw Appellant who, according to Mr. DeOleo, came towards them with a threatening and menacing face and told Mr. DeOleo that "I'm going to get you in the street, Cabron." Another encounter took place the morning of September 21, 2010, when Mr. DeOleo was standing in the front door of the house which he shared with Ms. Rodriguez. As he stood in the door way with Javier Gago, Mr. DeOleo observed Appellant drive past in a truck and come to a stop in the road, looking at Mr. DeOleo in what Mr. DeOleo described as a threatening manner. Mr. DeOleo testified that he left the home and went to the grocery store because he was afraid and watched from the grocery store as Appellant then circled the block and returned again to park in front of the home.

2

DeOleo spoke Appellant's nickname, 'Mingo', and in response, heard Appellant say in a voice which Mr. DeOleo recognized, 'I told you I would get you in the street, Cabron.' Mr. DeOleo then turned, ran towards the grocery store, and heard gun shots as he ran. Mr. DeOleo was struck in the back, stomach and head as he ran towards and into the grocery store. The owner of the grocery store, Eustacia Guzman, came to his assistance, [and] called Maritza Rodriguez, who ran to the grocery store. As he lay on the floor of the grocery store, Mr. DeOleo repeatedly told Ms. Guzman and Ms. Rodriguez that 'Mingo" had shot him.

Mr. DeOleo was taken to Temple University Hospital where he underwent surgery on his pelvis, intestines and stomach. In addition to the wounds in his abdomen, he also sustained wounds in his shoulder and on his head. He was hospitalized for nine days and had a recovery period in excess of three (3) months. While at Temple University Hospital, Mr. DeOleo was shown a photo array and identified Appellant as his assailant. He again identified Appellant as his assailant at trial.

Appellant was, as of September 2010, under a Protection From Abuse ("PFA") order obtained by Ms. Rodriguez. Ms. Rodriguez testified that she had sought the restraining order in June of 2010 because Appellant had harassed her both at home and at her place of employment, a Hess station on City Line Avenue, by repeated unwanted visits and phone calls in which he threatened to kill himself if Ms. Rodriguez would not allow him to return to the home that he had shared with Ms. Rodriguez and their two sons. Ms. Rodriguez testified that she observed Appellant driving past her home displaying what she believed to be a gun. She testified that she was scared of Appellant because she believed that he was violent, that she and [Appellant] argued, and that [Appellant] choked her 'so many times.'

Appellant sought to establish that Ms. Rodriguez sent him messages through Facebook and left text messages on his phone seeking to reconcile with him. Ms. Rodriguez denied that she had made the Facebook postings or the phone calls. The Commonwealth introduced testimony identifying the phone number used for these text messages as belonging, at the time of the alleged text messages, to Jorge Santoni, Appellant's brother, not Ms. Rodriguez.

Appellant presented alibi testimony through his cousin, Damien Santoni, who contended that Appellant was at his garage located at 249 West Duncannon [Street] doing electrical work at the time he allegedly had made the threatening drive-by on September 21, 2010[,] described by Mr. DeOleo[,] and that Appellant had been present at his garage at 4610 4th Street at the time Mr. DeOleo was shot. Mr. Santoni's testimony was supported by the testimony of his son, Devon Moore, who testified that he had seen Appellant at the 249 West Duncannon [Street] garage as well as at the 4610 10th Street garage at those times.

Appellant also presented the testimony of his niece, Yajaira Reyes, who lives with his mother, to dispute the description of [the] July of 2010 encounter provided by Ms. Rodriguez and Mr. DeOleo. In contrast to the testimony of Mr. DeOleo and Ms.

3

Rodriguez, Ms. Reyes testified that the aggressor was Ms. Rodriguez who 'spoke in a bad tone' to Appellant and said[,] 'What is this carbon doing here, this bastard, this son of a bitch, I'm going to put him in jail.' Ms. Reyes testified that Appellant said nothing during the encounter.

See Trial Court Opinion, 11/12/12 (citations to the record and emphasis omitted here).[3]

## ISSUES RAISED ON APPEAL

Appellant raises the following issues on appeal:

1. "Trial counsel was ineffective for opening the door to the introduction of other act evidence, including evidence of domestic violence '911' calls, which were made in 2005 from the home that Mr. Gago and Ms. Rodriguez were sharing. These calls did not provide evidence of violence towards Mr. DeOleo, the victim. That other act evidence also included testimony that Petitioner was really violent and choked and shook Ms. Rodriguez, was cheating on her, and drinking heavily and using marijuana. N.T. 9/22/11, 82-83. This was solely evidence of domestic abuse and violence, and/or was evidence not relevant to the charge that Mr. Gago tried to kill Mr. DeOleo; and/or was intended to paint Mr. Gago as a bad man. Counsel did not have a reasonable basis for opening the door to the presentation of this evidence; and in using this evidence to prove that Mr. Gago was otherwise violent, this evidence prejudiced him severely as it destroyed the presumption of innocence and also tended to demonstrate that he was inherently a bad man."

2. "Counsel was ineffective for failing to object to the attempted murder and aggravated assault instructions given by the Court. Trial Counsel had objected to the proposed Commonwealth jury instructions regarding these crimes because the words 'allegedly shooting' and 'allegedly shot' were absent from the attempted murder and aggravated assault instructions. The absence of this wording made it appear that the Court was in agreement with the Commonwealth's proposed instructions that 'Mr. Gago had shot Mr. DeOleo three times.' Although, the Court agreed with the defense position, N.T. 9/26/11, 8, the 'allegedly' language was not included in those instructions, and Counsel never requested the Court to modify the instructions and recharge the jury after these instructions were given with the omitted language. Thus, both instructions reflected that Mr. Gago had shot Mr. DeOleo three times. N.T. 9/26/11, 69-71. Counsel had no reasonable basis for failing to object after the instruction was given, since it constituted waiver of the claim. Furthermore, as noted above, Mr. Gago was prejudiced by this omission as it was made to appear that the Court agreed that Mr. Gago was the shooter and it is an axiom of appellate law that juries are presumed to follow a Court's instructions."

---

[3] The Superior Court relied on the same recitation of facts in its Memorandum Opinion filed on November 20, 2013. See Commonwealth v. Gago, 1942 EDA 2012 (November 20, 2013) (Memorandum Opinion, J. Bender).

4

3. "Counsel was ineffective in presenting attempted exculpatory evidence that phone calls had been received by Mr. Gago from Maritza Rodriguez, in an attempt to nullify the Commonwealth's jealousy motive, when the phone was listed in the name of Jorge Santoni who is the brother of Mr. Gago, and the calls did not come from Ms. Rodriguez. By presenting this testimony without taking the simple steps of investigating the bona fides of this evidence, Counsel allowed the Commonwealth to present testimony that Petitioner's defense was not truthful which undercut his own defense and credibility with the jury. Counsel also had no reasonable basis for not investigating to determine from whom the phone calls were made, just as the prosecution did, and just like it should reasonably do with all its witnesses and evidence to determine their bona fides. See, N.T. 9/23/11, 37-43."

4. "Counsel was ineffective in failing to object to the hearsay evidence presented by ADA Kathryn Brown that Jorge Santoni owned the phone, descried[sic] in the above paragraph. This evidence was presented for the truth of the matter asserted, i.e., that this phone number was listed to Jorge Santoni for the past five years. Thus, this evidence was classic hearsay and not admissible. Pa. R.E. 801(c)."

5. "Counsel was ineffective for failing to seek to test the shell casings at the scene for DNA evidence."

6. "The cumulative effect of all errors was so prejudicial that a new trial should be granted, even if the errors were not individually significant enough to require the grant of a new trial."

## DISCUSSION

This Court will address Appellant's claims in the order raised above.

1. Whether "[t]rial counsel was ineffective for opening the door to the introduction of other act evidence, including evidence of domestic violence '911' calls, which were made in 2005 from the home that Mr. Gago and Ms. Rodriguez were sharing."

The standard of review from the denial of post-conviction relief "is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." Commonwealth v. Jones, 590 Pa. 202, 240-241 (2006). "While [appellate courts] will always defer to [the] PCRA court's factual determinations where supported by the record, the ultimate question of whether facts rise to the level of arguable merit is a legal

5

determination." Id. "The findings of a post-conviction court, which hears evidence and passes on the credibility of witnesses, should be given great deference." Id. at 244. Appellate courts "will not disturb the findings of the PCRA court if they are supported by the record, even where the record could support a contrary holding." Id. The "scope of [appellate] review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party." Id. The findings of the PCRA court "will not be disturbed unless they have no support in the certified record." Commonwealth v. Sampson, 900 A.2d 887, 890 (Pa. Super. 2006).

"It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." Commonwealth v. Koehler, 36 A.3d 121, 132 (Pa. 2012). "[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the 'ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Commonwealth v. Spotz, 624 Pa. 4, 33 (Pa. 2014). "Thus, to prove counsel ineffective, Appellant must demonstrate that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) Appellant was prejudiced by counsel's act or omission." Id. "If a petitioner fails to prove any of these prongs, his claim fails." Spotz, 624 Pa. 4, 33. Moreover, "it is well-settled that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ... test, the court may proceed to that element first." Koehler, 36 A.3d 121, 132.

6

Appellant claims his trial counsel rendered ineffective assistance by "opening the door" to "evidence of domestic violence '911' calls ... made in 2005 from the home that [Appellant] and Ms. Rodriguez were sharing;" and to "testimony that [Appellant] was really violent and choked and shook Ms. Rodriguez, was cheating on her, and drinking heavily and smoking marijuana." Appellant claims such evidence was inadmissible under Pennsylvania Rule of Evidence 404(b), which provides in pertinent part:

> (b) Crimes, Wrongs or Other Acts.
>
> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

See Pa. R.E. 404(b).

This Court will summarize the testimony and evidence that is relevant to this issue. On direct examination, Ms. Rodriguez testified that her relationship with Appellant had ended in April 2010, when she "kick[ed]" him out of the home they shared. Because Appellant began harassing and threatening her at home, at her work, and on the phone, Ms. Rodriguez obtained a Protection From Abuse (PFA) order in June 2010. In violation of the PFA order, Appellant continued calling Ms. Rodriguez, pleading with her to give their relationship "another opportunity." Appellant repeatedly told Ms. Rodriguez that he was "sad," "desperate," wanted his family back," and was contemplating suicide. (N.T., 9/21/11, pgs. 90-96).

Ms. Rodriguez testified that on July 7, 2010, she went to City Hall with Mr. DeOleo to assist him with divorce paperwork. Appellant was at City Hall that same day and saw Ms. Rodriguez and Mr. DeOleo. Appellant appeared "really mad" and told Mr. DeOleo, "Oh, you

7

are the one, Cabron, with her, I got you in the street." Appellant also addressed Ms. Rodriguez and said, "You with him, Oh, he's the one you with, him." That same month, Appellant repeatedly drove by Ms. Rodriguez's home. On one occasion, Appellant drove by and called Ms. Rodriguez a "puta." Another time, on July 13, 2010, Ms. Rodriquez filed a police report after Appellant drove by while holding an object which Ms. Rodriquez believed to be a gun. Ms. Rodriguez testified that Appellant's harassment "scared" her because Appellant is "really violent." (N.T., 9/21/11, pgs. 96-103).

On cross-examination, trial counsel examined Ms. Rodriguez about whether *she* was "the jealous one" in her relationship with Appellant. In this regard, trial counsel examined Ms. Rodriguez about an assault she committed in 2007, when she punched and cut Appellant's former wife/girlfriend with whom Appellant was having a sexual affair. Appellant impregnated his former wife/girlfriend at the same time he impregnated Ms. Rodriguez, who testified she was "hurt" and felt deceived by Appellant. Trial counsel similarly examined Ms. Rodriguez about whether her overall relationship with Appellant was "stormy, "rocky," "tumultuous," and "[p]roblematic." (N.T., 9/21/11, pgs. 119-125; N.T., 9/22/11, pgs. 46-47).

Trial counsel as well examined Ms. Rodriguez about phone calls and text messages she purportedly made to Appellant after the shooting. Trial counsel also examined Ms. Rodriguez about Facebook messages that she purportedly sent to Appellant under an account belonging to "Mariela Santiago." In these Facebook postings, Ms. Rodriguez purportedly stated that she loved and missed Appellant. Ms. Rodriguez denied making the phone calls and sending all but one of the text messages, and denied owning the Facebook account under the name Mariela Santiago and sending Appellant any Facebook messages. (Id. at pgs. 47-69).

8

Trial counsel additionally asked Ms. Rodriguez about a Police report she filed on July 7, 2010, and whether "that [was] the first report to a police officer regarding these sets of circumstances?" Ms. Rodriguez replied that prior to the incident on June 7, 2010, she had made a "few more" police reports regarding Appellant. Trial counsel asked Ms. Rodriguez whether she possessed "any paperwork" concerning the prior police reports, and Ms. Rodriguez testified, "[n]o." (N.T., 9/21/11, pgs. 131-132).

Trial counsel further attempted to establish that relations between Appellant and Ms. Rodriguez were amicable during the few months preceding the shooting, insofar as they were cooperating with each other regarding child custody and visitation rights. Trial counsel thus attempted to undercut Ms. Rodriguez's implication that Appellant was beset by jealousy and anger over Ms. Rodriguez's relationship with Mr. DeOleo. (N.T., 9/21/11, pgs. 139-142; N.T., 9/22/11, pgs. 32-33).

On re-direct examination, the Commonwealth examined Ms. Rodriguez about her "tumultuous, jealous relationship" with Appellant, which trial counsel had already referenced. Ms. Rodriguez testified that Appellant was "really violent" during their relationship and would "shake" and "choke" her. Over trial counsel's objection, Ms. Rodriguez testified that she was in "a really violent relation with [Appellant], ... especially emotional because he cheating, in the past he drink, he use marijuana." (N.T., 9/22/17, pgs. 82-83).

Over trial counsel's objection, the Commonwealth also introduced a document showing that eleven 911 calls were made from the homes that Appellant and Ms. Rodriguez shared during their relationship. The document was admitted to establish the dates on which the calls were made, the addresses from which they were made, and the "coding" of the calls ("domestic incident" or "person screaming"). (N.T., 9/23/11, pgs. 62-64).

9

On direct appeal, the Superior Court addressed Appellant's challenge to Ms. Rodriguez's testimony that Appellant was "really violent" and had "choked and shook her." The Superior Court agreed with this Court that trial counsel "had 'opened the door' to the nature of the relationship between Ms. Rodriguez and Appellant," and thus "Rule 404(b) did not bar ... admission" of the testimony. Commonwealth v. Gago, 2013 Pa. Super. Unpub. LEXIS 2819, *18-19 (Pa. Super. 2013). The Superior Court also held that trial counsel had "opened the door to the evidence of the 911 calls ('911 call log') made from the home shared by Ms. Rodriguez and Appellant." Id. at *20.

In his PCRA petition and Rule 1925(b) Statement, Appellant claims his trial counsel "did not have a reasonable basis for opening the door to the presentation of [the above] evidence; and in using this evidence to prove that Mr. Gago was otherwise violent, this evidence prejudiced him severely as it destroyed the presumption of innocence and also tended to demonstrate that he was inherently a bad man."

"[W]here matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." Koehler, 36 A.3d 121, 132. "[A] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." Spotz, 624 Pa. 4, 33; Commonwealth v. Davido, 106 A.3d 611, 620-621 (Pa. 2014). "In reviewing trial counsel's performance, [courts] will not find ineffectiveness for failure to choose the best trial tactics or strategy to effectuate Appellant's interests." Commonwealth v. Showers, 681 A.2d 746, 753 (Pa. Super. 1996). "Rather, the proper inquiry is whether counsel's actions or lack thereof had some reasonable basis." Id. "If so, counsel is deemed effective." Id. "Not every

10

choice made by counsel will play out as intended; however, the test is not whether the course chosen is successful, but rather whether in making that choice there was a logical reason supporting counsel's action." Commonwealth v. Smith, 606 Pa. 127, 155 (Pa. 2010) (citations omitted here).

"[A] claim of ineffectiveness may not be evaluated in hindsight." Commonwealth v. Speight, 544 Pa. 451, 461 (Pa. 1996). Rather, all a court "need[s] [to] determine is whether the course of action chosen by trial counsel at the time of trial had some reasonable basis designed to effectuate his client's best interests, and, if so, [the court] will deem counsel effective and [the] inquiry ends." Id. Moreover, the ineffectiveness standard "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." Commonwealth v. Philistin, 617 Pa. 358 at fn. 23 (Pa. 2012) (citing Harrington v. Richter, 562 U.S. 86, 110 (2011); Strickland v. Washington, 466 U.S. 668, 688 (1984)).

During Appellant's PCRA hearing, trial counsel did not have a solid recollection of his strategic decisions at trial. Nevertheless, counsel testified that his goal in examining Ms. Rodriguez about her relationship with Appellant, which encompassed the assault she committed on Appellant's former wife/girlfriend in 2007, was "to undercut the insinuation by the Commonwealth that [Appellant] was the more violent of the individuals" in the "admittedly ... stormy relationship." (N.T., 12/12/16, pgs. 15-18). Moreover, during the pretrial motion hearing, trial counsel explained that he sought to cross-examine Ms. Rodriguez about her 2007 assault in order to undercut the Commonwealth's theory that Appellant had shot Mr. DeOleo "over jealousy." In counsel's words:

> ... The victim in that case is a lady by the name of Betzaida Lopez... This was [Appellant's] former wife. [Appellant] has two children with Betzaida Lopez, he has two children, he has two boys with Maritza Rodriguez. Maritza Rodriguez stabbed Betzaida because she believed that [Appellant] was still sleeping with Betzaida. This goes to

11

undercut their theory that it was [Appellant], since we are allowing in the general theory about the jealousy, because that's their theory that this was a shooting over jealousy, that it was, in fact, Maritza Lopez, who is the jealous one with regard to this relationship.

So it is directly relevant as to who the victim is, the connection that Ms. Rodriguez has with Ms. Lopez and the ongoing jealousy between the two woman regarding children, the two girls versus the two boys. So it goes to undercut the Commonwealth's theory that Maritza Rodriguez wants nothing to do with [Appellant], that she was absolutely fed up with him. In fact, it was the opposite. And we will be providing that cross-examination and rebuttal throughout the defense. This is directly relevant.

(N.T., 9/19/11, pgs. 43-44).

It was clear the Commonwealth had sought to establish that jealousy was Appellant's motive for shooting Mr. DeOleo. The Commonwealth examined Ms. Rodriguez about Appellant's numerous phone calls to her in which he alternately expressed regret, anger, and sadness over the end of their relationship. The Commonwealth also examined Ms. Rodriquez about Appellant's threatening conduct and remarks to Mr. DeOleo and Ms. Rodriguez. It was equally clear that, on cross-examination, trial counsel sought to undercut the Commonwealth's jealousy theory by establishing it was Ms. Rodriguez, not Appellant, who was jealous and vindictive about their tumultuous relationship. Moreover, trial counsel sought to establish that the prior "tumultuous," "rocky" relationship did not support a motive to shoot Mr. DeOleo because their relationship was amicable during the two months preceding the shooting.

Under the circumstances, trial counsel's effort to undercut the Commonwealth's jealousy theory by examining Ms. Rodriguez about her relationship with Appellant, and about her own jealousy-inspired violence, had "some reasonable basis" designed to effectuate Appellant's interests. Speight, 544 Pa. 451, 461 (counsel is deemed effective if his "course of action chosen … at the time of trial had some reasonable basis designed to effectuate his client's best interests[.]"). That counsel's strategy proved unsuccessful is immaterial. Smith, 606 Pa. 127,

12

155 ("[T]he test is not whether the course chosen is successful, but rather whether in making that choice there was a logical reason supporting counsel's action.").

Regarding the 911 call log, trial counsel testified that he was unaware of the log's existence but "probably should have anticipated it." However, the log did not indicate *who* made the 911 calls or specifically *why* they were made. To establish prejudice for his ineffectiveness claim, Appellant must show there "is a reasonable probability that, but for counsel's error, the outcome of the [trial] would have been different." Smith, 606 Pa. 127, 141. Putting aside the 911 log, the properly admitted evidence included the victim's multiple identifications of Appellant as the shooter, and Appellant's *post*-PFA order harassment and threats to the victim and Ms. Rodriguez. Given this compelling evidence, it is not reasonably probable that the brief presentation of the call log, which provided little context regarding the calls, had tipped the scale in this case. Appellant's PCRA claim on this ground therefore was properly dismissed.

**2.      Whether trial counsel "was ineffective for failing to object to the attempted murder and aggravated assault instructions given by the Court."**

Appellant alleges that his trial counsel was ineffective for failing to object to this Court's following jury instructions for the crimes of attempted murder and aggravated assault:

> First of all, Mr. Gago's charged with attempted murder. **To find him guilty you must find three elements have been proven to you beyond a reasonable doubt. Number one, that Mr. Gago did a certain act; that is, that he shot Mr. DeOleo three times in the back, the stomach, the head. That's the first element.** Number two, that when he shot Mr. DeOleo three times the defendant had the specific intent to kill him; that is, he had a fully informed intent to kill and was conscious of his own intention. And the third element is that the shooting constituted a substantial step toward the commission of a killing that the defendant intended to bring about.
>
> Those are the three elements of attempted murder.
>
> . . .

13

**If you are satisfied that the three elements of attempted murder have been proven beyond a reasonable doubt, then you should find the defendant guilty. Otherwise, you must find him not guilty.**

Mr. Gago is also charged with aggravated assault. It is a separate crime. **To find him guilty of this offense there are three elements that must be proven to you beyond a reasonable doubt.** Number one, that the defendant caused serious bodily injury to Mr. DeOleo when he shot him three times. Serious bodily injury is bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

The second element is that the defendant acted intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. And, actually, there are two elements, I apologize. That was the second element I just gave to you.

(N.T., 9/26/11, pgs. 69-72) (bold print supplied here).

Appellant argues that the word "allegedly" should have preceded the word "shot" in the Court's instructions. Appellant claims he "was prejudiced by this omission as it was made to appear that the Court agreed that [Appellant] was the shooter" rather than the "alleged" shooter, and "it is an axiom of appellate law that juries are presumed to follow a Court's instructions."

"When evaluating the propriety of jury instructions, [courts] will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper." Commonwealth v. Charleston, 94 A.3d 1012, 1021 (Pa. Super. 2014) (citations omitted here). "[I]t is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." Id. "Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error." Id.

This Court's instructions clearly tracked the language of Pennsylvania's Suggested Standard Jury Instructions (Crim) §§ 12.901A.1 and 15.2702B. It is therefore "presumed that such instructions are an accurate statement of the law." Commonwealth v. Kerrigan, 920 A.2d

14

190, 198 (Pa. Super. 2007) (citing Commonwealth v. Prosdocimo, 578 A.2d 1273, 1277 (Pa. 1990)). Moreover, this Court instructed that Appellant's shooting of the victim was an element of both crimes, which must be proven to the jury beyond a reasonable doubt. Viewed in its entirety, this Court's instructions unquestionably advised that it was the jury's prerogative to determine whether the Commonwealth established beyond a reasonable doubt that Appellant had shot Mr. DeOleo, and Appellant's appeal on this ground is meritless.[4]

**3.      Whether trial counsel "was ineffective in presenting attempted exculpatory evidence that phone calls had been received by Mr. Gago from Maritza Rodriguez, in an attempt to nullify the Commonwealth's jealousy motive, when the phone was listed in the name of Jorge Santoni who is the brother of Mr. Gago, and the calls did not come from Ms. Rodriguez."**

Appellant provided his counsel with fabricated evidence that Ms. Rodriguez had called and texted Appellant from a particular phone number. It turned out that the phone number

---

[4] This Court additionally instructed the jury as follows regarding Appellant's presumption of innocence, the jury's role as factfinder, and the Commonwealth's burden of proof:

> ... [T]he defendant is presumed to be innocent. The fact that he was arrested and accused of a crime is not evidence against him. Furthermore, the defendant is presumed innocent throughout the trial and unless and until you conclude based upon your careful and impartial consideration of the evidence that the Commonwealth has proven his guilt beyond a reasonable doubt.

> It is not the defendant's burden to prove that he is not guilty. Instead, it's the Commonwealth that always has the burden of proving each and every element of the crimes charged and that the defendant is guilty of those crimes beyond a reasonable doubt. The person accused of a crime is not required to present any evidence or prove anything in his own defense. If the Commonwealth's evidence fails to meet its burden then your verdict must be not guilty. On the other hand, if the Commonwealth's evidence does prove to you beyond a reasonable doubt that the defendant is guilty, then your verdict should be guilty. (N.T., 9/26/11, pgs. 52-53).

15

belonged to Appellant's brother, not to Ms. Rodriguez. Appellant now complains that his counsel was ineffective for not investigating Appellant's false evidence that Appellant wished to have presented at trial. Appellant's argument is frivolous.

"The reasonableness of counsel's investigation and preparation depends critically on the information supplied by the defendant." Commonwealth v. Uderra, 550 Pa. 389, 401 (1998) (citing Commonwealth v. Peterkin, 511 Pa. 299 (1986); Strickland v. Washington, 466 U.S. 668 (1984)). The United States Supreme Court has explained:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigations decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Strickland, 466 U.S. 688, 691.

Counsel's failure to catch Appellant's own deception does not equate to ineffective assistance, and Appellant's lies merit no relief. See Uderra, 550 Pa. 389, 401 ("Appellant's own failure to cooperate with counsel in order to apprise him of allegedly relevant information cannot ... provide a basis for ineffectiveness claims.").

4.      Whether trial counsel "was ineffective in failing to object to the hearsay evidence presented by ADA Kathryn Brown that Jorge Santoni owned the phone" which Appellant had falsely claimed to have belonged to Ms. Rodriguez.

16

On September 22, 2011, trial counsel cross-examined Ms. Rodriguez about phone calls she purportedly made to Appellant from the number (267) 257-2067. Ms. Rodriguez denied making the calls and did not recollect ever possessing a phone with that number. (N.T., 9/22/11, pgs. 47-69). That evening the prosecutor called that number in the presence of her colleague, assistant district attorney Katie Brown, Esquire (Ms. Brown), from the prosecutor's office. The following day, September 23, 2011, Ms. Brown testified that she listened to the call, that a male identifying himself as Jorge Santoni answered the phone, and that this male stated that the number – *i.e.*, (267) 257-2067 – belonged to him. The male stated that he had possessed that phone number for five (5) years. (N.T., 9/23/11, pgs. 127-132).

Appellant claims that Ms. Brown's testimony concerning the male's statements were "presented for the truth of the matter asserted – *i.e.*, that [the] phone number was listed to Jorge Santoni for the past five years." Appellant therefore claims "this evidence was classic hearsay and not admissible."

Hearsay "is a statement made by someone other than the declarant while testifying at trial and is offered into evidence to prove the truth of the matter asserted[.]" Commonwealth v. Ali, 608 Pa. 71, 126 (Pa. 2010). However, "[t]he hearsay rule has no application where the question is whether certain things were said or written by a third person and not whether they are true." Commonwealth v. Jacobs, 445 Pa. 364, 367 (Pa. 1971). "When a witness testifies that someone said something to him and the purpose is not to show that what was said was true but that the statement was made, the testimony is not hearsay but instead a 'verbal act.'" Commonwealth v. Jones, 543 A.2d 548, 550 (Pa. Super. 1988); Commonwealth v. Wright, 455 Pa. 480, 485 (Pa. 1974) ("The hearsay rule does not apply to all statements made to or overheard by a witness, but only those statements which are offered as proof of the truth of what is said.").

17

The Commonwealth presented Ms. Hall's testimony to establish that the phone number belonged to someone other than Ms. Rodriguez, not to prove the content of the phone conversation. Since Ms. Hall's testimony was not presented to prove the content of the phone conversation, but to establish circumstantially that Ms. Rodriguez had not called Appellant from that number, the testimony was properly admitted as "verbal act" evidence.

**5.     Whether trial counsel "was ineffective for failing to seek to test the shell casings at the scene for DNA evidence?"**

At the PCRA hearing, Appellant claimed his trial counsel was ineffective for failing to obtain DNA testing of the shell casings recovered from the shooting scene. Appellant's claim is too speculative to merit relief.

"A defendant raising a claim of ineffective assistance of counsel is required to show actual prejudice: that is, that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings." Commonwealth v. Charleston, 94 A.3d 1012, 1019-1020 (Pa. Super. 2014) (quoting Commonwealth v. Spotz, 84 A.3d 294, 315 (2014)). "This standard is different from the harmless error analysis that is typically applied when determining whether the trial court erred in taking or failing to take certain action." Id. "The harmless error standard ... states that whenever there is a 'reasonable possibility' that an error might have contributed to the conviction, the error is not harmless." Id. "This standard, which places the burden on the Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard than the ... prejudice standard, which requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings." Id. "This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the

18

stewardship of counsel." Id. "In a collateral attack, we first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel." Id. "Unsupported speculation does not establish [a] reasonable probability" that counsel's ineffectiveness could have reasonably had an adverse effect on the outcome of the trial. Id. at 1026.

Here, it would be too speculative to find that DNA testing would have favorably impacted Appellant's position at trial. The shooter (a) wore gloves; and (b) even if the shooter had handled the bullets with his bare hands, all or most of the DNA would likely have been destroyed by the heat/combustion created when the bullets were discharged from the gun's chamber. (See N.T., 12/12/16, pgs. 62-64). Thus, Appellant cannot establish the prejudice prong of his ineffectiveness claim. See Charleston, supra ("Unsupported speculation does not establish reasonable probability."). Beyond that, given the victim's repeated and consistent identifications of Appellant as the shooter, there was a reasonable risk that DNA analysis would have inculpated Appellant. Accordingly, counsel's decision to forego such testing and focus on other avenues of defense was reasonable. See Richter, 562 U.S. 86, 108 ("An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense.").

**6.    Whether "[t]he cumulative effect of all errors was so prejudicial that a new trial should be granted, even if the errors were not individually significant enough to require the grant of a new trial."**

Since trial counsel's above-referenced conduct was either reasonable or did not so prejudice Appellant as to adversely affect the outcome of trial, Appellant is not entitled to a new trial and his appeal should be denied.

19

## CONCLUSION

For the reasons set forth in the foregoing Opinion, this Court's Order dismissing

Appellant's PCRA Petition should be affirmed.

BY THE COURT:

DATE: 12/18/17

_____
SUSAN I. SCHULMAN, J.

## PROOF OF SERVICE

I, Darece Williford, secretary to Honorable Susan I. Schulman, hereby certify that I

served, on December 20, 2017 by first-class mail, postage prepaid, a true and correct copy

of the foregoing Opinion on the following:

Jerome M. Brown, Esquire
8 Penn Center Plaza
1628 JFK Boulevard, Suite 1000
Philadelphia, PA 19103

Hugh Burns, ADA
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Darece Williford